IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JUXTACOMM TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ASCENTIAL SOFTWARE CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 2:07-CV-359 LED |

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN PARAGRAPHS OF THE SUMMARY JUDGMENT DECLARATIONS OF JUXTACOMM'S EXPERTS RUDD AND DANSKY**

## I. INTRODUCTION

JuxtaComm argues that the opinions presented in its supplemental expert declarations are not new. If that were true, JuxtaComm would not have needed to serve supplemental expert declarations. JuxtaComm knew there were serious flaws in its positions on infringement, foreign sales, the entire market value rule, and the doctrine of equivalents, and JuxtaComm filed supplemental declarations in an attempt to remedy those flaws. The declarations disclosed several new, different and inconsistent theories, different from what JuxtaComm previously disclosed during fact and expert discovery, but the new declarations only highlight the shortcomings in JuxtaComm's case. JuxtaComm does so after expressly stipulating it would not further amend its infringement contentions, following a lengthy meet and confer process, and in exchange for a number of other concessions and global resolution of disputes concerning the scope of the case. [Docket No. 625 at ¶4.] The Court should strike the declarations as untimely and grant Microsoft's pending motions.

## II. ARGUMENT

### A. JuxtaComm Presents New Infringement Theories In Dr. Rudd's Declaration

There is no question that the opinions presented in Dr. Rudd's declaration are new. As discussed in Microsoft's pending motion for summary judgment of no infringement [Docket No. 646], the asserted claims of the '662 patent require "a *script processor* for utilizing metadata from the metadata database *to control data transformation within said systems interface*..." [Docket No. 646, Ex. C at Claims 1 & 17.] Dr. Rudd admitted during his deposition that Microsoft's accused software features, DTS and SSIS, do not perform data transformations within the accused systems interface. [*Id.*, Ex. B at 553:16-554:9; 561:15-21; 563:2-6.]

To avoid summary judgment, JuxtaComm presented several new infringement theories in Dr. Rudd's supplemental declaration. First, in paragraph 48 of his declaration Dr. Rudd opined

that in the accused software, "data transformation occurs within the boundaries of the system." [Docket No. 686, Ex. 43, ¶ 48.] But the claims do not say that the script processor controls transformations within the *system* or within the *distribution system*, they say it controls transformations within the *systems interface*. Thus, in addition to being new, this opinion ignores the plain language of the claims and should be struck.

Recognizing the deficiency, JuxtaComm presented another new alternative argument at paragraphs 8 and 9 of Dr. Rudd's supplemental declaration. This time, JuxtaComm argued that what the claims actually require is "control" of data transformations through the systems interface, rather than a script processor that controls data transformations within the systems interface. This new argument reads out the disputed claim language entirely. The "systems interface" is described in limitation (a) as "defining" interfaces, rules, and scripts, while limitation (c) is focused on the script processor, which controls data movement and data transformation.[1] The claim language says it is the *script processor* that utilizes metadata from a metadata database "to control data transformations within said systems interface." This can only have one meaning: *the script processor controls transformation within the systems interface*.[2] This alternative argument is thus both untimely and incorrect and should be struck.

---

[1] JuxtaComm's own expert said this limitation deals with actions the script processor performs at run time, not with any actions taken at design time. [Docket No. 712, Ex. C at 17.]

[2] JuxtaComm has argued that Defendants' so-called "interpretation" reads out a preferred embodiment. However, this is not an interpretation issue at all. The Court already adopted JuxtaComm's proposed construction of "systems interface," and JuxtaComm cannot be heard now to complain how their own expert applied their own construction. Moreover, this application of the claim language does not read out a preferred embodiment, as the term "systems interface" appears no where in the patent specification. The language of paragraph (c) itself could not be more clear: it requires a script processor that controls "data transformation within said systems interface," referring back to the term in paragraph (a). JuxtaComm's new argument does nothing less than impermissibly re-write the claims. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 -1365 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.")

JuxtaComm presents yet another new alternative infringement argument at paragraphs 10-11 of Dr. Rudd's supplemental declaration. Here, Dr. Rudd states that if the claims mean what they say (that the script processor controls data transformation within the systems interface), he should simply be allowed to amend his opinion to include parts of the system that allegedly perform data transformation in DTS and SSIS. This merely reads out the claim limitation in a different way. Dr. Rudd has already identified the "systems interface" in DTS and SSIS, and admitted transformations do not occur there. [Docket No. 646, Ex. B at 553:16-554:9; 561:15-21; 563:2-6.] Allowing Dr. Rudd to identify other elements at the eleventh hour cannot undo his admission that DTS and SSIS do not meet the literal language of the claims, nor should JuxtaComm be permitted to make its infringement case a moving target on the eve of trial.

Finally, at paragraphs 30, 33 and 36, Dr. Rudd presents new opinions under the doctrine of equivalents for "within said systems interface." JuxtaComm does not even attempt to argue these opinions are not new – its expert previously admitted that he did not provide any analysis under the doctrine of equivalents. [*Id.* at 351:22-352:14.] Instead, JuxtaComm argues these theories are somehow justified because Microsoft allegedly did not disclose this non-infringement theory during discovery. Yet it is JuxtaComm's burden to show in the first instance that each and every limitation of the claims is met by DTS and SSIS. Moreover, Microsoft identified this limitation as missing in both an interrogatory response, [*See* Docket No. 717, Ex. JJ] and in its expert report on non-infringement [*Id.*, Ex. KK]. Furthermore, Dr. Rudd's declaration is legally insufficient. It fails to provide "particularized testimony and linking argument as to the 'insubstantiality of differences' with respect to the function, way, result test." *GTX Corp. v. Kofax Image Products, Inc.*, 571 F. Supp. 2d 742, 749 (E.D. Tex. 2008). His discussion is thus both untimely and insufficient and should be struck.

### B. JuxtaComm Presents New Theories Regarding Foreign Sales

Dr. Rudd previously opined that SQL Server directly infringed only claims 17-19. [Docket No. 657, Ex. A at 31 & 37.] His discussion of downloads and golden masters only came under a section of indirect infringement titled "exporting component infringement under 35 U.S.C. § 271(f)(1) and (2)." [*Id*. at 33 and 39.] There, he stated only that the SQL Server software "as they were intended to be installed, assembled or used outside the United States" allegedly included all the limitations of claims 1-10 and 17-19. [*Id*. at 34 & 40.] Now, Dr. Rudd claims the golden master itself is a component that infringes under 35 U.S.C. § 271(f), and states for the first time that the download server in Puerto Rico directly and indirectly infringes claims 1 & 17. But JuxtaComm is not seeking damages for a few servers and a handful of golden masters created in the United States. Instead, it is seeking hundreds of millions of dollars in damages for all *copies* of SQL Server made, used and sold overseas, a theory rejected by the Supreme Court. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007).

Similarly, Mr. Dansky provided no analysis in his expert report for why he believed the parties would have included foreign sales as part of the base for a reasonable royalty. [*See* Docket No. 657, Ex. K at 26 (stating only that "I have included all of the world-wide revenue…in the royalty base").] JuxtaComm claims this was sufficient to put defendants "on notice," but an expert report must do more than merely state a conclusion – it must also provide the basis and reasons for that opinion. *See* Fed. R. Civ. Proc. 26(a)(2)(B). Mr. Dansky did not provide any basis in his report for including world wide revenue in the royalty base, and even in his deposition, said nothing other than his damages were based on the "golden master" process. [*Id*. at Ex. M.][3] It was not until Mr. Dansky served his supplemental declaration that he said he

---

[3] JuxtaComm also claims Mr. Dansky could not have supported his opinions on distribution because Microsoft allegedly did not produce the necessary information until after his report

believed the parties would have considered foreign sales during a hypothetical negotiation. Purporting to inject non-infringing foreign sales into a hypothetical negotiation end-runs the Supreme Court's decision in *AT&T*, contradicts the presumption against extraterritoriality and is unsupportable. The new opinions are untimely, legally erroneous and should be struck.

### C. JuxtaComm Presents New Entire Market Value Rule Theories

JuxtaComm claims it put Defendants "on notice" of its entire market value theory by including all revenue for SQL Server as the base for its royalty calculation. The point, however, is not that Microsoft did not know JuxtaComm wanted to base damages on the entire market value, but that JuxtaComm lacks any evidence entitling it to do so. Stating a conclusion is not sufficient – expert reports must disclose the basis and reasons for any opinions, and JuxtaComm failed to provide that basis.

Mr. Dansky never opined SQL was the basis of customer demand, nor did he make any effort to apportion *either* the royalty base or the royalty rate downward to account for the fact that DTS and SSIS are only a small fraction of SQL Server. He never discussed the value of DTS or SSIS as compared to the unpatented components of SQL Server, and he never spoke of the contribution DTS or SSIS allegedly make to the market value of SQL Server as a whole. During his deposition Mr. Dansky admitted he was not aware of any evidence that any customer had ever purchased SQL Server solely for its ETL functionality, [Docket No. 657, Ex. M at 583:22-584:10], and that there are "a variety of reasons" for why people purchase SQL Server [*Id.* at 559:5-15]. It was not until his supplemental declaration that Mr. Dansky stated he had

---

was served. This statement is demonstrably false for at least two reasons. First, Microsoft provided two 30(b)(6) witnesses on distribution during discovery. Second, Dr. Rudd's own expert report, served the same day as Mr. Dansky's, included a discussion of the golden master distribution process. [*See* Docket No. 657, Ex. A at 33-35 & 39-41.]

allegedly considered the contribution of DTS and SSIS to SQL Server as opposed to any other components. No analysis or bases for the late opinions is provided, and they should be struck.

### D. Microsoft will be Prejudiced if JuxtaComm is Allowed to Supplement

Tacitly admitting that Dr. Rudd's and Mr. Dansky's summary-judgment declarations contain new opinions, JuxtaComm asks the Court to permit it to supplement its contentions. But JuxtaComm should not be permitted to inject sweeping new infringement and damages theories into this case on the eve of trial.

First, as part of a larger and complex stipulation among the parties involving numerous issues, JuxtaComm — just like Microsoft— stipulated on July 1, 2009 that it would not further amend its infringement contentions. Moreover, this stipulation was signed after the rebuttal expert report of Microsoft's expert, Dr. Doris Carver, was served on June 16, 2009. JuxtaComm should not be permitted to renege on that bargained-for agreement simply because it failed to prove multiple elements of its case.

Second, Microsoft will be unfairly prejudiced if JuxtaComm is permitted to inject new contentions into this case with trial just three weeks away. For example, Microsoft did not have the opportunity to depose JuxtaComm's experts on their new opinions, nor have Microsoft's experts had an opportunity to rebut these new opinions. With trial scheduled to start on November 9, re-opening expert discovery at this late date will only divert Microsoft from preparing its case for trial to the unfair benefit of JuxtaComm. The unfairness to Microsoft would be particularly acute because JuxtaComm's failure to timely disclose these opinions is JuxtaComm's fault. JuxtaComm has the burden of proving infringement, and it should have disclosed all of its new opinions during expert discovery. Now that Microsoft through a summary-judgment motion has demonstrated JuxtaComm's failures of proof, JuxtaComm should not be permitted to avoid summary judgment through its new, untimely disclosed theories.

## III. CONCLUSION

For all of the foregoing reasons, Microsoft motion to strike should be granted.

Dated: October 16, 2009                    Respectfully submitted,

FISH & RICHARDSON P.C.


By: */s/ Kelly C. Hunsaker*
    Ruffin C. Cordell
    Texas Bar No. 04820550
    (e-mail: cordell@fr.com)
    FISH & RICHARDSON P.C.
    1425 K Street, 11th Floor
    Washington, DC 20005
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    Kelly C. Hunsaker (admitted pro hac vice)
    (e-mail: hunsaker@fr.com)
    FISH & RICHARDSON P.C.
    500 Arguello Street, Ste. 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    Facsimile: (650) 839-5071

    W. Chad Shear
    Texas State Bar No. 24013493
    (e-mail: shear@fr.com)
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    Telephone: (214) 747-5070
    Facsimile: (214) 747-2091

    Eric H. Findlay
    Texas State Bar No. 00789886
    (e-mail: efindlay@findlaycraft.com)
    FINDLAY CRAFT, LLP
    6760 Old Jacksonville Highway, Suite 101
    Tyler Texas 75703
    Telephone: (903) 534-1100
    Facsimile: (903) 534-1137

    Counsel for Defendant
    MICROSOFT CORPORATION

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 16, 2009, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                      */s/ Kelly C.Hunsaker*
                                                         Kelly C. Hunsaker

50678765.doc